1
2
3
4
5
6
7

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| LAUREL BRESAZ, et al., | Case No.:14-CV-03868-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| COUNTY OF SANTA CLARA, et al., | Re: Dkt. No. 13 |
| Defendants. | |

Plaintiffs Laurel Bresaz, Donna Hayes, and Steven Marshall (collectively, "Plaintiffs")
bring this action against the County of Santa Clara, Aldo Groba, and Kristin Anderson
(collectively, "Defendants"). Plaintiffs allege that Defendants violated the United States
Constitution and various federal and state statutes in connection with an incident that led to the
death of Brandon Marshall ("Decedent"). *See* ECF No. 1 ("Compl."). Before the Court is
Defendants' motion to dismiss six of the eleven causes of action in Plaintiffs' Complaint. ECF No.
13 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this
case, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss, for the
reasons stated below.

## I.  BACKGROUND

### A.  Factual Background

1

United States District Court
Northern District of California

The following is drawn from the factual allegations in Plaintiffs' Complaint.

Plaintiffs are relatives of the Decedent. Laurel Bresaz ("Bresaz") is the wife and successor in interest to the Decedent. Compl. ¶ 5. Donna Hayes is the mother of the Decedent, and Steven Marshall ("Marshall") is the Decedent's father. *Id*. ¶¶ 6-7. Aldo Groba ("Groba") and Kristin Anderson ("Anderson") are both deputies employed by the Santa Clara County Sheriff's Office, the local sheriff's department for the County of Santa Clara. *Id*. ¶¶ 9-11.

This lawsuit stems from an incident which occurred on December 10, 2013. *Id*. ¶ 17. Decedent was an employee at the company Roku, Inc. ("Roku") in Saratoga, California. *Id*. ¶ 15. Plaintiffs allege that the Decedent "had a history of mental illness for which he had taken prescription medication," and that the Decedent may have been taking prescription medication on December 10, 2013. *Id*. ¶¶ 16-17. At some point in the late morning or early afternoon of December 10, 2013 (which was a Tuesday), the Decedent entered a conference room in the Roku offices where a meeting was in progress. *Id*. ¶ 17. The Decedent "appeared emotionally distressed and disoriented." *Id*. While in the conference room, the Decedent called Marshall and requested that Marshall "pick him up from work right away because he was having a problem." *Id*. One or more Roku employees also called 911 to request help for the Decedent. *Id*. No Roku employees who witnessed the Decedent's behavior at that time reported that the Decedent posed a threat of violence or criminal behavior. *Id*.

The Decedent then left the building and went to the Roku parking lot. *Id*. ¶ 18. At some point, employees with the Santa Clara County Fire Department arrived on the scene and spoke with the Decedent. *Id*. According to the fire department employees, the Decedent appeared "manic." *Id*. The Decedent voluntarily agreed to go to the hospital. *Id*. Subsequently, paramedics arrived on the scene and advised the Decedent that he could have a family member take him to the hospital. *Id*. ¶ 19. After the Decedent agreed, a paramedic called Marshall on the Decedent's cell phone. *Id*. The paramedic told Marshall that the Decedent was not feeling well and needed to be taken to the hospital. *Id*. Marshall expressed at least twice to the paramedic a desire to take his son

United States District Court
Northern District of California

1    to the hospital. *Id.* ¶¶ 19-20.

2        Subsequent to the arrival of the paramedics, Groba and Anderson arrived at the scene. *Id.*

3    ¶ 21. Plaintiffs allege that Groba and Anderson, *inter alia*, knew or should have known at the time

4    that "they were responding to a call seeking help for an emotionally distressed individual" and that

5    the Decedent "was experiencing mental health issues that required specialized medical assistance,

6    procedures, and tactics." *Id.* Plaintiffs also allege that Groba and Anderson "knew or should have

7    known that the paramedics were making arrangements with [Marshall] to get appropriate medical

8    care for [the Decedent]." *Id.* ¶ 23. Anderson, "[d]espite lacking a reasonable belief that [the

9    Decedent] presented any threat of harm to anyone . . . approached [the Decedent] from behind,

10    when his back was to her, and began interacting with him." *Id.* ¶ 24. This caused the Decedent

11    "further distress" and the Decedent became "even more upset and agitated." *Id.* ¶¶ 24-25.

12        At some point, the Decedent "moved toward [Anderson]." *Id.* ¶ 25. Groba then "moved

13    quickly" to the Decedent, "possibly causing [the Decedent] to fear for his life." *Id.* The Decedent,

14    "[p]ossibly acting in self-defense," swung his key chain, a short, thin, rounded, aluminum rod, at

15    Groba and Anderson. *Id.* Groba then shot the Decedent in the stomach. *Id.*

16        At the time Groba shot the Decedent, Marshall was on the phone with one of the

17    paramedics at the scene. *Id.* ¶ 28. Marshall heard the gunshot over the phone, and heard the

18    Decedent cry out. *Id.* Marshall heard the Decedent cry out a second time before the paramedic

19    ended the call. *Id.*

20        Either Groba or Anderson, or both deputies, restrained the Decedent's legs with zip ties.

21    *Id.* ¶ 29. Plaintiffs also claim that Groba and Anderson otherwise "delay[ed] critical medical

22    treatment for the gunshot wound." *Id.* Santa Clara County Emergency Medical Services

23    transported the Decedent to Santa Clara Valley Medical Center, where Bresaz, Marshall, and

24    Hayes, as well as other members of the Decedent's family, arrived. *Id.* ¶ 31. The Decedent died at

25    approximately 3:45 p.m. on December 10, 2013. *Id.*

26    **B.  Procedural History**

27

28

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   On August 26, 2014, Plaintiffs filed the instant lawsuit in this Court, alleging eleven causes

2   of action under the U.S. Constitution and various federal and state statutes. *See* Compl. Bresaz, as

3   successor in interest to the Decedent, asserts a cause of action under 42 U.S.C. § 1983 for

4   violations of the Decedent's rights under the Fourth and Fourteenth Amendments of the U.S.

5   Constitution; violation of 42 U.S.C. § 12132, the Americans with Disabilities Act; violation of

6   California Civil Code § 52.1, the Bane Act; intentional and negligent infliction of emotional

7   distress under California Code of Civil Procedure § 377.30; and negligence. *Id.* ¶¶ 45, 52, 63, 77,

8   85, 90 & 97. The Plaintiffs collectively assert causes of action under 42 U.S.C. § 1983 and

9   California Code of Civil Procedure § 377.60 for violation of their Fourteenth Amendment right to

10  familial relationships with the Decedent; wrongful death pursuant to California Code of Civil

11  Procedure § 377.60; and violation of California Civil Code § 52.1, the Bane Act. *Id.* ¶¶ 58, 71 &

12  82. Marshall individually asserts a cause of action for negligent infliction of emotional distress. *Id.*

13  ¶ 104.

14      On November 5, 2014, Defendants filed the instant motion to dismiss. *See* Mot.

15  Defendants move to dismiss all of Plaintiffs' claims against Anderson; Bresaz's claim under the

16  Americans with Disabilities Act; Plaintiffs' claim under the Bane Act; Bresaz's claims for

17  intentional and negligent infliction of emotional distress; and Marshall's claim for negligent

18  infliction of emotional distress. *See id.* On November 19, 2014, Plaintiffs filed an opposition to the

19  motion to dismiss. ECF No. 14 ("Opp'n"). On November 26, 2014, Defendants filed a reply. ECF

20  No. 18 ("Reply").

21  **II. LEGAL STANDARD**

22      **A. Motion to Dismiss**

23      Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

24  action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

25  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

26  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

27  defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

28

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Accordingly, leave to amend is denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. ANALYSIS

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

### A.  Plaintiffs' Claims Against Defendant Anderson

Defendants first move to dismiss all of Plaintiffs' claims against Defendant Anderson. Mot. at 2-5. Defendants argue that Anderson did not violate the Decedent's constitutional rights because Anderson did not do anything unconstitutional. Mot. at 3-4. Specifically, Defendants argue "Anderson did [not] violate the Fourth Amendment or do anything wrong in approaching [the Decedent] and attempting to interact with him." Mot. at 4. Therefore, Plaintiffs fail to allege that Anderson "did anything other than engage in a lawful encounter with [the Decedent]," and thus Plaintiffs fail to allege that Anderson violated the Decedent's constitutional or statutory rights. *Id*. Plaintiffs respond that, even assuming Anderson's conduct did not by itself violate the Decedent's rights, Anderson can still be held liable based on the fact that Anderson was an integral participant in the Decedent's death. Opp'n at 2.

In the Ninth Circuit, a plaintiff may hold multiple police officers liable when at least one officer violates the plaintiff's constitutional rights based on an "integral participant" theory of liability. *Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996). "[I]ntegral participation does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd v. Benton Cnty.*, 374 F.3d 773, 780 (9th Cir. 2004) (internal quotation marks omitted). Rather, the integral participant inquiry looks to whether an officer was a "'full active participant'" in the alleged Constitutional violation, *id.* (quoting *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989), as well as whether the officer "performed police functions" that were "integral to the [Constitutional violation]," *Melear*, 862 F.2d at 1186; *see also Bracken v. Okura*, 955 F. Supp. 2d 1138, 1152 (D. Haw. 2013) ("[I]ntegral participation requires some fundamental involvement in the conduct that allegedly caused the violation.").

For instance, where an officer provides "armed backup" to the officer who directly commits the constitutional violation, that fact alone may provide sufficient reason to find the first officer to be an "integral participant." *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) ("integral participant" rule is deemed satisfied where involved officers "provided armed backup during an unconstitutional search") (internal quotation marks omitted). Alternatively, where an

6

officer participates in the conduct that leads to the constitutional violation "in a meaningful way," that officer may be held liable as an integral participant. *Boyd*, 374 F.3d at 780. For example, in *Blankenhorn v. City of Orange*, the plaintiff alleged that police officers violated his Constitutional rights by placing him in hobble restraints during arrest. 485 F.3d 463, 479-80 (9th Cir. 2007). The Ninth Circuit held that an officer who helped handcuff the plaintiff while the plaintiff was lying on the ground was an "integral participant" in the alleged Constitutional violation, because the officer's "help in handcuffing [the plaintiff] was instrumental in the officers' gaining control of [the plaintiff], which culminated in [another officer's] application of hobble restraints." *Id.* at 481, n.12; *see also Bracken*, 955 F. Supp. 2d at 1152-53 (officer who was present at stop, stood in front of plaintiff, and requested identification from plaintiff was "clearly a knowing participant in the stop" and therefore was an "integral participant" in whatever alleged constitutional violations occurred during the stop).

However, the "integral participant" theory does not permit the finder of fact to "find the individual officers liable for merely being present at the scene of the" constitutional violation. *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002). Therefore, officers who are mere "bystanders" during the commission of constitutional violations are not considered integral participants. *Boyd*, 374 F.3d at 780. For instance, an officer who arrives at the scene after the unconstitutional act is completed, or an officer who provides crowd control at the scene, are not integral participants. *Blankenhorn*, 485 F.3d at 481 n.12. Nor is an officer who interviews a witness in the front yard of a building, and does not participate in the unconstitutional search of the building "in any fashion," an integral participant. *Hopkins*, 573 F.3d at 770.

Here, Plaintiffs allege that Anderson may be held liable for Defendant Groba's alleged use of excessive force because Anderson was an integral participant in the incident. Plaintiffs allege that while Anderson and Groba were responding to the scene in front of Roku's offices, the two deputies "knew or should have known" that they were "responding to a call seeking help for an emotionally distressed individual" and that the Decedent "was experiencing mental health issues

7

United States District Court
Northern District of California

that required specialized medical assistance, procedures, and tactics." Compl. ¶ 21. Plaintiffs also allege that Anderson and Groba "knew or should have known that the paramedics were making arrangements with [Marshall] to get appropriate medical care for [the Decedent]." *Id.* ¶ 23. Plaintiffs further allege that Anderson, "lacking a reasonable belief that [the Decedent] presented any threat of harm to anyone . . . approached [the Decedent] from behind, when his back was to her, and began interacting with him." *Id.* ¶ 24. Plaintiffs claim that Anderson "knew or should have known this would cause [the Decedent] further distress." *Id.* Plaintiffs further allege that because Anderson "caused [the Decedent] to become even more upset and agitated," the Decedent moved toward Anderson. *Id.* ¶ 25. Plaintiffs allege that Groba then "overreached and moved quickly to [the Decedent], possibly causing [the Decedent] to fear for his life" and "possibly act in self-defense" when the Decedent allegedly "swung his key chain . . . at the deputies." *Id.* Plaintiffs therefore allege that Anderson's actions "unreasonably interfered with the paramedics' efforts to arrange appropriate medical care" and "provoke[ed] a violent confrontation" that led to the Decedent's death. *Id.* ¶ 23.

Accepting the factual allegations in the Complaint as true and construing the pleadings in the light most favorable to Plaintiffs, *Manzarek*, 519 F.3d at 1031, the Court finds that Plaintiffs have pled sufficient facts to show that Anderson was an integral participant in the incident which led to the alleged violation of Decedent's constitutional and statutory rights. Plaintiffs allege that Anderson, knowing that the Decedent was experiencing mental health issues, recklessly approached the Decedent from behind while the Decedent was in an agitated state and attempted to engage the Decedent in conversation. Compl. ¶¶ 23-24. Plaintiffs allege that this caused the Decedent further distress and led to the chain of events which culminated in Groba's alleged use of excessive force and the Decedent's death. *Id.* ¶ 25. Plaintiffs have therefore alleged that Anderson, by provoking the Decedent into engaging in the conduct which led to the constitutional and statutory violations at issue in this lawsuit, participated "in a meaningful way" in the unconstitutional and illegal conduct. *Boyd*, 374 F.3d at 780. Put another way, Anderson's

"physical participation in the alleged violation was part of a closely related series of physical acts leading to the violation," which is sufficient to find that Anderson was an integral participant. *Bracken*, 955 F. Supp. 2d at 1152 (citing *Blankenhorn*, 485 F.3d at 481 n.12).

Defendants argue that Anderson was not an integral participant because Anderson did not independently violate the Decedent's constitutional rights. *See* Mot. at 4-5. However, the integral participant theory "does not require that each officer's actions themselves rise to the level of a constitutional violation." *Boyd*, 374 F.3d at 780. Rather, an officer is an integral participant when that officer participates "in a meaningful way" in the conduct that led to the alleged violations. *Id*. Defendants also argue that Anderson's conduct was no different than the conduct of an officer in *Hopkins* who was not found to be an integral participant in the search of a building. Reply at 5. In *Hopkins*, the Ninth Circuit held that an officer who "waits in the front yard" of a building, interviews a witness who was not the defendant, and "does not participate in the unconstitutional search [of the building] in any fashion" was not an integral participant. *Hopkins*, 573 F.3d at 770. Here, in contrast to *Hopkins*, Plaintiffs have alleged that Anderson approached the Decedent and provoked the physical confrontation which culminated in Groba's alleged use of excessive force and the Decedent's death. Compl. ¶¶ 23-25. Whereas the officer in *Hopkins* could be characterized as a "mere bystander [to his colleagues' conduct]," *Hopkins*, 573 F.3d at 770, here Anderson participated in a meaningful way in the allegedly unconstitutional and illegal conduct by provoking the Decedent's acts. Accordingly, the Court disagrees that Anderson's alleged conduct is analogous to the officer's conduct in *Hopkins*.[1]

For the foregoing reasons, the Court finds that Plaintiffs have sufficiently alleged that

---

[1] In Defendants' motion to dismiss, Defendants cite two cases in support of their argument. Mot. at 2-3. In *United States v. Washington*, the Ninth Circuit held, *inter alia*, that no Fourth Amendment seizure occurs when a law enforcement officer "merely identifies himself and poses questions to a person if the person is willing to listen." 490 F.3d 765, 770 (9th Cir. 2007). In *United States v. Mendenhall*, the Supreme Court held that when an officer questions an individual, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy." 446 U.S. 544, 552 (1980). Neither *Washington* or *Mendenhall* dealt with the issue of integral participant liability, and therefore are not applicable here.

9

United States District Court
Northern District of California

1    Anderson was an integral participant in the alleged violation of the Decedent's Constitutional

2    rights. Accordingly, Defendants' motion to dismiss Plaintiffs' claims against Anderson is

3    DENIED.

4    **B. Bresaz's Claim as Successor in Interest to Decedent for Violation of the Americans with Disabilities Act**

5            Defendants next move to dismiss Bresaz's fourth cause of action for the alleged violation

6    of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Mot. at 5-6. Bresaz alleges

7    the fourth cause of action as the successor in interest to the Decedent. Compl. ¶ 65. In the

8    Complaint, Bresaz alleges that the Decedent is a disabled individual within the meaning of the

9    ADA; that the Decedent was otherwise qualified to participate in or receive the benefit of Santa

10   Clara County's emergency medical services; and that Defendants deprived the Decedent of his

11   rights under the ADA by denying the Decedent the benefit of the County's emergency health

12   services. *Id.* ¶¶ 66-68. Defendants move to dismiss Bresaz's ADA claim on two grounds: that

13   Plaintiffs fail to adequately allege that the Decedent had a disability within the meaning of the

14   statute, and that the ADA does not apply to "exigent law enforcement activity to quickly

15   developing circumstances occurring in a public place." Mot. at 5-6. Plaintiffs contend that they

16   have adequately pled in the Complaint that the Decedent had a disability within the meaning of the

17   statute, because Plaintiffs have alleged that the Decedent "had a history of mental illness" and that

18   the Decedent's mental illness resulted in a "significant disruption" of a meeting at the Decedent's

19   work. Opp'n at 5-7. Plaintiffs also argue that the ADA applies to the circumstances of the

20   Decedent's death. Opp'n at 8-9. As discussed more fully below, the Court finds that Plaintiffs

21   have failed to adequately plead that the Decedent had a disability within the meaning of the ADA,

22   and therefore does not address Defendants' alternate argument for dismissal.

23           Title II of the ADA prohibits a public entity from discriminating against a qualified

24   individual with a disability on the basis of that disability. 42 U.S.C. § 12132; *Weinreich v. L.A.*

25   *County Metro. Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997). To state a claim of disability

26   discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an

27

28

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1   individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the

2   benefit of some public entity's services, programs, or activities; (3) the plaintiff was either

3   excluded from participation in or denied the benefits of the public entity's services, programs, or

4   activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,

5   denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinreich,* 114

6   F.3d at 978.

7        With respect to the first element, the ADA defines "disability" as:

8            (A) a physical or mental impairment that substantially limits one or
             more of the major life activities of such individual;

9

10           (B) a record of such an impairment; or

11           (C) being regarded as having such an impairment.

12   42 U.S.C. § 12102(1). The phrase "physical or mental impairment" means, *inter alia*, "any mental

13   or psychological disorder" including "emotional or mental illness." 28 C.F.R. § 35.104. The

14   phrase "a record of such an impairment" means, *inter alia*, having a "history of . . . mental or

15   physical impairment that substantially limits one or more major life activities." *Id.* Here, Plaintiffs

16   argue that the Decedent was disabled within the meaning of the ADA as defined by either subpart

17   (A) or subpart (B). *See* Opp'n at 5-7. The Court addresses each subpart in turn after discussing the

18   general standard as applied to ADA claims.

19        "To survive a motion to dismiss [an] ADA claim," the plaintiff "must state facts to show

20   that a claim to relief is plausible on its face." *Kittleson v. Sears, Roebuck & Co.*, No. CV 10-00106

21   DAE BMK, 2010 WL 2485935, at *3 (D. Haw. June 15, 2010). "[V]ague and conclusory

22   allegations" that the ADA's statutory requirements are satisfied "are insufficient to survive a

23   motion to dismiss." *Ovitsky v. Oregon*, No. 3:12-CV-02250-AA, 2013 WL 4505832, at *3-4 (D.

24   Or. Aug. 20, 2013). Other district courts in this Circuit have dismissed ADA claims for failing to

25   allege with the requisite factual particularity that the elements of the ADA are met, including that

26   the plaintiff is disabled within the meaning of the statute. *See Longariello v. Gompers Rehab. Ctr.*,

27   No. CV-09-1607-PHX-GMS, 2010 WL 94113, at *3 (D. Ariz. Jan. 5, 2010) ("Merely labeling

28

United States District Court
Northern District of California

himself as 'disabled' in the Complaint is insufficient to explain what physical or mental disability [the plaintiff] has."); *Kaur v. City of Lodi*, No. 2:14-CV-828-GEB-AC, 2014 WL 3889976, at *4-5 (E.D. Cal. Aug. 7, 2014) (finding that "conclusory allegations are insufficient under the applicable pleading standard to allege facts from which a reasonable inference may be drawn that Parminder suffered from a disability defined in the ADA."); *Lambdin v. Marriott Resorts Hospitality Corp.*, No. CIV. 14-00345 SOM, 2015 WL 263569, at *2 (D. Haw. Jan. 21, 2015) ("It is not enough for Lambdin to state, in conclusory fashion, that he has a disability. Having been injured or living with an impairment does not necessarily guarantee that one is protected by the ADA.") (citing *Sanders v. Arenson Prods., Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1996)).

Here, as for the first subpart of the statute—whether the Decedent had a "physical or mental impairment that substantially limits one or more . . . major life activities," § 12102(1)(A)—Plaintiffs make only two allegations in support of Plaintiffs' claim that the Decedent was disabled within the meaning of the ADA. First, Plaintiffs allege that the Decedent "had a history of mental illness for which he had taken prescription medication." Compl. ¶ 16. Second, Plaintiffs allege that county firefighters who were at the Roku parking lot at the time of the December 10, 2013 incident later reported that the Decedent "appeared 'manic.'" *Id*. ¶ 18. Where, as here, a plaintiff alleges that he or she is disabled within the meaning of the ADA, courts have generally required the plaintiff to plead the disability with some factual specificity. *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1058 (9th Cir. 2007) (plaintiff adequately alleged that he was disabled where plaintiff pled that he suffered from mental illness including "brain damage, and organic personality disorder"); *Puckett v. Park Place Entm't Corp.*, 332 F. Supp. 2d 1349, 1353 (D. Nev. 2004) (Plaintiff's allegation that he suffered from multiple sclerosis "[c]learly . . . qualifies as a physical impairment for purposes of the ADA" and satisfies the disability inquiry in an ADA cause of action); *William S. v. Lassen Cnty.*, No. S-05-1217 DFL CMK, 2006 WL 929398, at *3 (E.D. Cal. Apr. 11, 2006) (denying motion to dismiss ADA claim even though plaintiff failed to specifically allege how he was mentally or physically impaired, where another of plaintiff's claims

12

specified that plaintiff was HIV positive). Here Plaintiffs offer no factual allegations to support Plaintiffs' claim that the Decedent was disabled, such as the type or nature of mental illness the Decedent had. Plaintiffs' allegation that the Decedent had a "mental illness," without more, is a "formulaic recitation of the elements of a cause of action" under the ADA and does not satisfy Plaintiffs' pleading obligations. *See Twombly*, 550 U.S. at 555. Plaintiffs' additional allegation that the Decedent appeared to be "manic" is similarly insufficient. Plaintiffs do not allege that the Decedent was manic; rather, Plaintiffs allege that the Decedent "appeared 'manic'" to fire department personnel at the scene. Compl. ¶ 18. Moreover, even assuming that the appearance of being manic constitutes a disability in the ordinary usage sense of the term "disability," the fact that the Decedent *appeared* to have a disability in one isolated incident does not equate to the Decedent having a "disability" within the meaning of the ADA. *See Sanders*, 91 F.3d at 1354 n.2 ("The ADA defines 'disability' with specificity as a term of art. Hence a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA.").

In addition, even assuming that Plaintiffs' allegation that the Decedent's "mental illness" or "manic" appearance was sufficient, Plaintiffs have not alleged how the Decedent's mental illness "substantially limits one or more of the major life activities of" the Decedent as required by the first subpart of the statute. *See* 42 U.S.C. § 12102(1). Federal regulations define "substantially limits" as "[u]nable to perform a major life activity that the average person in the general population can perform," or being "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the average person. *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 801 (9th Cir. 2002) (citing 29 C.F.R. § 1630.2(j)(1)(i)-(ii)). In deciding whether a disability "substantially limits" a "major life activity," relevant factors "that should be considered include '[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.'"

13

1    *Id.* (quoting 29 C.F.R. § 1630.2(j)(2)(i)-(iii)).

2           Here, Plaintiffs argue that they have adequately pled that the Decedent's mental illness

3    "substantially limited" a major life activity of the Decedent because the Decedent "experience[ed]

4    mental and emotional distress at work, resulting in a significant disruption of a meeting." Opp'n at

5    7; Compl. ¶ 3. Plaintiffs are correct that federal regulations define "working" as a "major life

6    activity." *See* 42 U.S.C. § 12102(2)(A). However, Plaintiffs have not alleged that the Decedent's

7    mental illness substantially limited the Decedent's ability to perform at work as compared to the

8    average person; rather, Plaintiffs allege that the Decedent's mental illness disrupted a *single*

9    meeting at work. Compl. ¶ 3. Where, as here, a plaintiff's allegations "do not illuminate the

10   nature, severity, duration and impact of [the plaintiff's] disability," such allegations are

11   insufficient to "suggest that [the plaintiff] is substantially impaired by [the] purported disability."

12   *Rodriguez v. John Muir Med. Ctr.*, No. C 09-0731 CW, 2010 WL 1002641, at *2 (N.D. Cal. Mar.

13   18, 2010) (dismissing with leave to amend allegation that plaintiff "had a disability involving her

14   back" which "impacted major life activities such as lifting," because even though "lifting"

15   qualified as a major life activity under the ADA, plaintiff failed to allege sufficient facts to imply

16   she was "substantially impaired"); *United Parcel*, 306 F.3d at 801 (to determine if a disability

17   "substantially limits one or more major life activities," courts should look at whether the plaintiff

18   is "*[u]nable to perform* a major life activity that the average person in the general population can

19   perform," or whether the plaintiff is "*[s]ignificantly restricted* as to the condition, manner or

20   duration under which an individual can perform a particular major life activity" as compared to the

21   average person) (emphasis added); *see also Baker v. Roman Catholic Archdiocese of San Diego*,

22   No. 14CV0800 JM JMA, 2014 WL 7205738, at *4 (S.D. Cal. Dec. 17, 2014) (where a complaint

23   "borrows from 42 U.S.C. § 12102(a)(2)(A) (defining "major life activities" to include working

24   and "caring for oneself . . . seeing, hearing, eating, sleeping, walking, . . .") to allege that major life

25   activities such as working, walking, and seeing were impacted by her disability" the complaint

26   "fails to state a claim."). In their opposition, Plaintiffs argue that the Decedent's "mental illness

27

28   Case No.: 14-CV-03868-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    substantially limited his ability to concentrate, think, communicate, and perform his job." Opp'n a

2    7. However, this allegation appears nowhere in Plaintiffs' Complaint.

3         As for the second subpart—whether the Decedent had "a record of [a physical or mental

4    impairment that substantially limits one or more major life activities]," § 12102(1)(B)—Plaintiffs

5    similarly fail to sufficiently allege that the Decedent had "a record of" physical or mental

6    impairment that substantially limited one or more of his major life activities. To allege a record of

7    physical or mental impairment, a plaintiff must allege with at least some factual detail what the

8    record of impairment is. *See Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (plaintiffs

9    sufficiently alleged they had a "record" of physical or mental impairment where plaintiffs alleged

10   that they were addicted to drugs in the past, that they have been rehabilitated, and that they no

11   longer use drugs). Here, Plaintiffs argue that they have sufficiently alleged that the Decedent had a

12   "record" of physical or mental impairment because Plaintiffs allege in the Complaint that the

13   Decedent has a "history" of mental illness. Opp'n at 7; Compl. ¶ 16. However, "vague and

14   conclusory allegations" are insufficient to state a claim under the ADA. *Ovitsky*, 2013 WL

15   4505832, at *3-4; *see also Twombly*, 550 U.S. at 555 (a "formulaic recitation of the elements of a

16   cause of action" do not satisfy a plaintiff's pleading obligations). Plaintiffs must allege, with at

17   least some factual particularity, how the Decedent here had a "record" or "history" of physical or

18   mental impairment within the meaning of the ADA. *See Thompson*, 295 F.3d at 896.

19        For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' fourth cause of action

20   is GRANTED. However, Plaintiffs could cure the deficiencies identified herein by including some

21   factual specificity as to Plaintiffs' claim. Therefore, Plaintiffs are given leave to amend as to

22   Plaintiffs' fourth cause of action. *See Lopez*, 203 F.3d at 1130 (district court should give leave to

23   amend if the pleading can be cured by the allegation of other facts) (internal quotation marks

24   omitted).

25        **C. Plaintiffs' Claim for Violation of the Bane Act**

26        Defendants next move to dismiss Plaintiffs' seventh cause of action brought for

27

28

15

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1    Defendants' alleged violation of the Decedents' rights under California Civil Code § 52.1, the

2    Bane Act ("Bane Act"). Plaintiffs' seventh cause of action asserts a claim on behalf of Plaintiffs

3    under the Bane Act because of Defendants' alleged violation of "[the Decedent's] rights under the

4    Fourth and Fourteenth Amendments to the United States Constitution, the ADA, and Article I,

5    Sections 1, 7, and 13 of the California Constitution." Compl. ¶ 83. In Defendants' motion to

6    dismiss, Defendants argue that the Bane Act only provides a personal cause of action and is

7    therefore limited to "plaintiffs who have been the subject of" a violation of the Bane Act. Mot. at

8    7. Accordingly, Defendants argue that Plaintiffs cannot assert a violation of the Bane Act on

9    Plaintiffs' behalf because of harm suffered by the Decedent.[2] *Id.*

10         The Bane Act provides in relevant part that a person may bring a cause of action "in his or

11   her own name and on his or her own behalf" against anyone who "interferes by threats,

12   intimidation or coercion, with the exercise or enjoyment" of any constitutional or statutory right.

13   Cal. Civ. Code § 52.1. However, "[t]he Bane Act is simply not a wrongful death provision. It

14   clearly provides for a *personal* cause of action for the victim of a hate crime." *Bay Area Rapid*

15   *Transit Dist. v. Superior Court*, 38 Cal. App. 4th 141, 144 (1995) ("*BART*") (emphasis in

16   original). A party lacks standing to bring a claim under the Bane Act when the party does not

17   claim to have personally suffered a violation of a constitutional or statutory right. *Id.* (finding

18   parents of decedent did not have standing to bring their own Bane Act claim because of

19   constitutional violations suffered by the decedent).

20         Here, in Plaintiffs' seventh cause of action, Plaintiffs do not allege that they have suffered

21   a constitutional or statutory injury independent of the Decedent. *See* Compl. ¶ 83 (asserting claim

22   under the Bane Act for Defendants' alleged violation of "[the Decedent's] rights under the Fourth

23   and Fourteenth Amendments to the United States Constitution, the ADA, and Article I, Sections 1,

24   7, and 13 of the California Constitution."). Accordingly, Plaintiffs lack standing to bring a claim

25

26   [2] Plaintiffs' sixth cause of action is for a violation of the Bane Act brought by Bresaz as successor
     in interest to the Decedent. Compl. ¶¶ 77-80. The sixth claim for relief is not at issue in

27   Defendants' motion to dismiss.

28

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    under the Bane Act. *BART*, 38 Cal. App. 4th at 144.

2           Plaintiffs do not dispute that the seventh cause of action asserts a claim on Plaintiffs'

3    behalf for alleged constitutional and statutory violations suffered by the Decedent. Instead,

4    Plaintiffs argue that *BART* is no longer good law. Opp'n at 10. Specifically, Plaintiffs argue that

5    *BART* relied on one case in reaching its conclusion, *Boccato v. City of Hermosa Beach*, 29 Cal.

6    App. 4th 1797 (1994), which was superseded by statute in 2000. Accordingly, Plaintiffs argue that

7    "*BART*'s reliance on *Boccato* is no longer appropriate," and that a "Bane Act claim is not merely a

8    'personal action,' but one available to any party who otherwise meets the requirements of the Bane

9    Act." Opp'n at 10.

10          Plaintiffs' argument is not persuasive, for two reasons. First, Plaintiffs cite no authority,

11   and this Court located none, to support Plaintiffs' argument that "any party who otherwise meets

12   the requirements of the Bane Act" can bring a claim under that statute. Nor do Plaintiffs cite any

13   authority for the argument that *BART* is no longer persuasive. To the contrary, the California

14   Courts of Appeal continue to treat *BART* as good law. *See, e.g.*, *Navarette v. Tuttle*, No. B164474,

15   2005 WL 713789, at *5 (Cal. Ct. App. Mar. 30, 2005) (appellants, relatives of the decedent, did

16   not have standing to pursue a claim under the Bane Act for decedent's death because "'[t]he Bane

17   Act is simply not a wrongful death provision. It clearly provides for a *personal* cause of action for

18   the victim of a hate crime'") (quoting *BART*, 38 Cal. App. 4th at 144) (emphasis in original); *see*

19   *also LMN Co-Operative, Inc. v. Cnty. of Kern*, No. F061786, 2012 WL 1868932, at *4 (Cal. Ct.

20   App. May 23, 2012) (affirming lower court's denial of class certification of a Bane Act claim, and

21   citing *BART*'s holding that the Bane Act "provides for a *personal* cause of action for the victim of

22   a hate crime.") (emphasis in original). Absent convincing evidence to the contrary, the Court finds

23   the decision of the state Courts of Appeal persuasive on questions of state law. *See Vestar Dev. II,*

24   *LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (holding that when interpreting

25   state law, if a state's highest court has not decided the issue and "there is no convincing evidence

26   that the state supreme court would decide differently, a federal court is obligated to follow the

27

28

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    decisions of the state's intermediate appellate courts."). Furthermore, district courts in California

2    continue to follow *BART*'s holding. *See, e.g.*, *Medrano v. Kern Cnty. Sheriff's Officer*, 921 F.

3    Supp. 2d 1009, 1016 (E.D. Cal. 2013) (plaintiffs, siblings of the decedent, "lack standing to bring

4    a claim under the Bane Act on their own behalf") (citing *BART*, 38 Cal. App. 4th at 144).

5        Second, Plaintiffs overstate the *BART* court's reliance on *Boccato*. The *BART* court does

6    indeed cite to *Boccato* to support the proposition that "the rational interpretation of the Bane Act"

7    is that "it is limited to plaintiffs who themselves have been subject of violence or threats." *BART*,

8    38 Cal. App. 4th at 144 (citing *Boccato*, 29 Cal. App. 4th at 1809). However, the *BART* court in

9    reaching its decision also cites the plain language of the Bane Act, as well as policy reasons for

10   why standing under the Bane Act should be limited to those who personally experience a

11   violation. *Id.* at 144 (citing and quoting Bane Act that a person may bring a cause of action "in his

12   or her own name and on his or her own behalf"); *id.* at 144-45 (declining to extend standing under

13   the Bane Act to those who do not personally experience a constitutional violation because "one

14   could see the nightmare of trying to determine where the scope and extent of such liability would

15   end"). Therefore, Plaintiffs err when they argue that "*BART only* relied upon *Boccato v. City of*

16   *Hermosa Beach*." Opp'n at 10 (emphasis added).

17       For the reasons stated above, Defendants' motion to dismiss Plaintiffs' seventh cause of

18   action is GRANTED. Moreover, because Plaintiffs' seventh cause of action is barred as a matter

19   of law, granting Plaintiffs leave to amend would be futile. Therefore, Plaintiffs' seventh cause of

20   action is dismissed without leave to amend. *See Lopez*, 203 F.3d at 1130 (court may dismiss claim

21   without leave to amend where "pleading could not possibly be cured by the allegation of other

22   facts.") (internal quotation marks omitted).

23   **D.   Bresaz's Claim as Successor in Interest to Decedent for Intentional and Negligent
            Infliction of Emotional Distress**

24       Defendants next move to dismiss Bresaz's eighth and tenth causes of action for intentional

25   and negligent infliction of emotional distress respectively, brought pursuant to California Code of

26   Civil Procedure § 377.30. Bresaz asserts these two claims as successor-in-interest to the Decedent.

27

28

18

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Compl. ¶ 86 (claim for intentional infliction of emotional distress brought by Bresaz "in her capacity as the Successor in Interest to [the Decedent]"); *id.* ¶ 98 (same, for claim for negligent infliction of emotional distress). Defendants argue that where, as here, an estate brings a cause of action pursuant to California Code of Civil Procedure § 377.30 to recover for the emotional distress of a decedent, such a cause of action is barred by Code of Civil Procedure § 377.34. Mot. at 7-8. Section 377.34 provides that when a survivor action is brought by a decedent's successor in interest, "the damages recoverable . . . do not include damages for pain, suffering, or disfigurement." Cal. Civ. Proc. Code § 377.34.

Plaintiffs respond to Defendants' motion by arguing that district courts in this Circuit have held that § 377.34 does not preclude Plaintiffs who bring a claim under 42 U.S.C. § 1983 from recovering damages for the intentional and negligent infliction of emotional distress. *See* Opp'n at 13 ("Within this district, courts have recognized the availability of emotional distress damages in survival actions, particularly those involving Section 1983 excessive force claims."). Accordingly, because Plaintiffs argue they may be able to recover damages for emotional distress under Plaintiffs' § 1983 claims, Plaintiffs contend they "should be permitted to recover emotional distress damages on [the Decedent's] behalf under state law as well." Opp'n at 13.

The Court notes that there is a split of authority among California district courts on the question of whether California Code of Civil Procedure § 377.34 prohibits an estate from recovering emotional distress damages for a § 1983 claim brought on behalf of a decedent. *Compare Cotton v. City of Eureka*, 860 F. Supp. 2d 999, 1014 (N.D. Cal. 2012) (holding that plaintiffs who brought cause of action under § 1983 could recover for the decedent's emotional distress notwithstanding Code of Civil Procedure § 377.34 because "[a]t bottom, the Court finds that application of California's prohibition on the recovery of damages for pain and suffering in survival actions is inconsistent with § 1983"), *with Venerable v. City of Sacramento*, 185 F. Supp. 2d 1128, 1133 (E.D. Cal. 2002) (dismissing claim for damages under § 1983 for a decedent's emotional distress because "state law does not permit recovery of a decedent's pain and

19

1  suffering"). However, the Court need not reach this question because this is not the issue raised in

2  Defendants' motion to dismiss. Rather, Defendants have only moved to dismiss Plaintiffs' eighth

3  and tenth causes of action on the grounds that these claims are improperly brought under

4  *California Code of Civil Procedure § 377.30*. Mot. at 8; *see also* Compl. ¶ 86 (Plaintiffs' eighth

5  cause of action asserting claim for intentional infliction of emotional distress "pursuant to Cal.

6  Code Civ. Proc. § 377.30"); *id.* ¶ 98 (Plaintiffs' tenth cause of action asserting claim for negligent

7  infliction of emotional distress "pursuant to Cal. Code Civ. Proc. § 377.30").

8        California Code of Civil Procedure § 377.30 provides that "[a] cause of action that

9  survives the death of the person entitled to commence an action or proceeding passes to the

10  decedent's successor in interest." Cal. Civ. Proc. Code. § 377.30. However, the Code of Civil

11  Procedure separately provides that when an action is brought by a decedent's successor in interest,

12  "the damages recoverable . . . *do not include damages for pain, suffering, or disfigurement*." *Id.*

13  § 377.34 (emphasis added). The Ninth Circuit has held that where the estate of a decedent brings

14  tort claims under state law for the intentional and negligent infliction of emotional distress of the

15  decedent, § 377.34 "clearly precludes recovery of emotional distress damages." *Martin v. Cal.*

16  *Dept. of Veterans Affairs*, 560 F.3d 1042, 1050-51 (9th Cir. 2009). Moreover, Plaintiffs cite no

17  case, and this Court located none, that held that an estate may properly bring a cause of action

18  under Code of Civil Procedure § 377.30 to recover for a decedent's emotional distress simply

19  because the estate also brings separate causes of action under § 1983.[3]

20

21  [3] All the cases Plaintiffs cite in their opposition involve the separate question of whether an estate
   may recover damages for the emotional distress of the decedent under a claim brought pursuant to
22  42 U.S.C. § 1983. *See Cotton*, 860 F. Supp. 2d 999, 1010-11 (discussing admissibility of evidence
   of decedent's pain and suffering to determine Plaintiffs' damages under § 1983 claim); *Williams v.*
23  *City of Oakland*, 915 F. Supp. 1074, 1075 (N.D. Cal. 1996) (discussing "whether pain and
   suffering damages, which do not survive under California law, are nonetheless available to
24  survivors in a civil rights action under section 1983"); *T.D.W. v. Riverside County*, Case No.
   EDCV 08-232 CAS (JWJx), 2009 WL 2252072, at *5-7 (C.D. Cal. July 27, 2009) (denying
25  Defendants' motion in limine to exclude evidence of decedent's pain and suffering to establish
   damages for estate's § 1983 action); *Hirschfield v. San Diego Unified Port Dist.*, Case No. 08-CV-
26  2103 BTM (NLS), 2009 WL 3248101, at *3-4 (S.D. Cal. Oct. 8, 2009) (permitting plaintiffs to
   amend complaint to add damages claim for decedent's pain and suffering under § 1983 cause of
27  action); *Guerrero v. County of San Benito*, No. C 08-0307 PVT, 2009 WL 4251435, at *5-6 (N.D.

20

28

United States District Court
Northern District of California

Therefore, Defendants' motion to dismiss Plaintiffs' eighth and tenth causes of action is GRANTED. Moreover, because Plaintiffs' eighth and tenth causes of action are barred as a matter of law, granting Plaintiffs leave to amend would be futile. Accordingly, Plaintiffs' eighth and tenth causes of action are dismissed without leave to amend. *See Lopez*, 203 F.3d at 1130 (court may dismiss claim without leave to amend where "pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

### E.  Marshall's Claim for Negligent Infliction of Emotional Distress

Finally, Defendants move to dismiss Marshall's claim for negligent infliction of emotional distress. Mot. at 9. Defendants argue that under California law only a relative of a victim who is contemporaneously aware that an incident has caused injury to the victim can recover for emotional distress. *Id*. Defendants further argue that because Marshall was not physically present at the scene of the Decedent's shooting, Marshall "could not have known that his son was shot unless someone told him after the fact." Reply at 9. Plaintiffs rebut that Marshall has adequately alleged that Marshall was contemporaneously aware that the Decedent was shot at the time the incident occurred. Opp'n at 14-15.

In California, damages for a plaintiff-bystander's emotional distress are recoverable only if the plaintiff: "(1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress." *Thing v. La Chusa*, 48 Cal. 3d 644, 668-69 (1989). Here, Defendants argue that only the second factor—that the plaintiff must be "present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim"—bars Marshall's recovery. Mot. at 9.

California courts have described the second *Thing* requirement as mandating that the plaintiff be "a percipient witness to the traumatic incident and was contemporaneously aware the

---

Cal. Nov. 23, 2009) (finding that plaintiff could bring claim for damages under § 1983 for decedent's pain and suffering). Because Defendants have not moved to dismiss any claim for emotional distress damages Plaintiffs might bring pursuant to § 1983, these cases are inapposite.

21

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
Northern District of California

1  event was causing injury to the victim." *Ra v. Superior Court*, 154 Cal. App. 4th 142, 148-49

2  (2007); *Golstein v. Superior Court*, 223 Cal. App. 3d 1415, 1427 (1990) (recovery for emotional

3  distress "should be limited by [the] more stringent definition of the requirement of

4  *contemporaneous observance of event and injury*.") (emphasis added). "[A] plaintiff may establish

5  presence at the scene through non-visual sensory perception." *Ra*, 154 Cal. App. 4th at 149; *In re*

6  *Air Crash Disaster Near Cerritos, Calif.*, 967 F.2d 1421, 1424 (9th Cir. 1992) (under California

7  law to recover for emotional distress, a plaintiff "'need not visually perceive the injury while it is

8  being inflicted.'") (quoting *Wilks v. Hom*, 2 Cal. App. 4th 1264, 1269 (1992)). Indeed, "[a]

9  plaintiff may recover based on an event perceived by other senses so long as the event is

10  contemporaneously understood as causing injury to a close relative." *Bird v. Saenz*, 28 Cal. 4th

11  910, 916 (2002).

12       For instance, in *Haddox v. City of Fresno*, police pulled over a car and verbally warned the

13  occupants of the vehicle that "Whoever moves will get shot." No. 07-CV-00241-OWW-SMS,

14  2008 WL 53244, at *1 (E.D. Cal. Jan. 2, 2008), *abrogated on other grounds as stated in Sanchez*

15  *v. City of Fresno*, 914 F. Supp. 2d 1079, 1097 n.7 (E.D. Cal. 2012) (noting that *Haddox*'s

16  statement of the pleading standard in deciding a Rule 12(b)(6) motion pre-dated *Ashcroft v. Iqbal*,

17  556 U.S. 662 (2009)). At that time, the mother of one of the passengers in the vehicle was on the

18  phone with one of the passengers of the car. *Id.* The mother heard a policeman shout, "If you drop

19  your hands you will be shot" directed at the mother's child. *Id.* The *Haddox* court held that the

20  mother adequately stated a claim for the negligent infliction of emotional distress because she

21  alleged, *inter alia*, that she "observe[d] an injury-producing event in progress" by hearing it over

22  the phone. *Id.* at *13.

23       Here, Plaintiffs allege that Groba shot the Decedent "while Dr. Marshall was still on the

24  phone with the second paramedic" at the scene. Compl. ¶ 28. Plaintiffs further allege that Marshall

25  "contemporaneously heard [the] gun shot at the scene and [the Decedent's] resultant cries of

26  pain." *Id.* ¶ 106. Plaintiffs also allege that Marshall "contemporaneously . . . was aware that [the

27

28

United States District Court
Northern District of California

22

1   Decedent] had been seriously injured." *Id*. Accordingly, Plaintiffs have alleged sufficient facts

2   from which this Court can infer that Marshall was "a percipient witness to the traumatic incident

3   and was contemporaneously aware the event was causing injury to the victim." *Ra*, 154 Cal. App.

4   4th at 148-49. This satisfies the second *Thing* requirement to state a claim for recovery for the

5   infliction of emotional distress. *Thing*, 48 Cal. 3d at 667-68 (for bystander to claim damages for

6   emotional distress, bystander must, *inter alia*, be "present at the scene of the injury-producing

7   event at the time it occurs and is then aware that it is causing injury to the victim").

8       In Defendants' reply, Defendants concede that Marshall may "establish presence at the

9   scene through non-visual sensory perception." *Id*. at 9. Nevertheless, Defendants argue that

10  Marshall cannot prove that he was contemporaneously aware that Groba had shot the Decedent

11  because Marshall "was not present at the scene and could not have known that his son was shot

12  unless someone told him after the fact." *Id*. However, in ruling on a Rule 12(b)(6) motion, the

13  Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the

14  light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Here, Plaintiffs' allege

15  that at the time of the incident Marshall was on the phone with a paramedic at the scene, that

16  Marshall contemporaneously heard the gunshot and the Decedent's resultant cries in pain, and that

17  Marshall contemporaneously "was aware that [the Decedent] had been seriously injured." Compl.

18  ¶ 106. Accepting these allegations as true and drawing all inferences in Plaintiffs' favor, *see*

19  *Manzarek*, 519 F.3d at 1031, Plaintiffs' have sufficiently alleged a claim for the negligent

20  infliction of emotional distress. Accordingly, Defendants' motion to dismiss Plaintiffs' eleventh

21  cause of action is DENIED.

22  **IV. CONCLUSION**

23      Defendants' motion to dismiss Plaintiffs' seventh, eighth, and tenth causes of action is

24  GRANTED without leave to amend. Defendants' motion to dismiss Plaintiffs' fourth cause of

25  action is GRANTED with leave to amend. Defendant's motion to dismiss is otherwise DENIED.

26  Should Plaintiffs elect to file an amended complaint to cure the deficiencies identified herein, they

27

28

United States District Court
Northern District of California

23

shall do so within thirty (30) days of the date of this Order. Failure to meet the thirty-day deadline to file an amended complaint, or failure to cure the deficiencies identified in this Order, will result in a dismissal with prejudice. Plaintiffs may not add new parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: March 17, 2015

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS