UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAUREL BRESAZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SANTA CLARA, et al.,<br><br>    Defendants. | Case No. 14-CV-03868-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 86 |

Plaintiffs Laurel Bresaz, Donna Hayes, and Steven Marshall (collectively, "Plaintiffs") bring this action against the County of Santa Clara, Aldo Groba, Kristin Anderson, Julian Quinonez, Mark Carrasco, Paula McAllister, and Does 4–50 (collectively, "Defendants"). Plaintiffs allege that Defendants violated the United States Constitution and various federal and state statutes in connection with an incident on December 10, 2013, that led to the death of Brandon Marshall (the "Decedent"). Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint. *See* ECF No. 86 ("Mot."). The Court finds Defendants' motion suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the Court VACATES the hearing set for October 1, 2015, at 1:30 p.m. In addition, the Court hereby

1

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

1 CONTINUES the Case Management Conference, currently set for October 1, 2015, at 1:30 p.m. to
2 November 18, 2015, at 2:00 p.m. Having considered the parties' submissions, the relevant law,
3 and the record in this case, the Court hereby GRANTS in part and DENIES in part Defendants'
4 motion to dismiss.

**I.   BACKGROUND**

**A. Factual Background**

Plaintiffs are relatives of the Decedent. Laurel Bresaz ("Bresaz") is the wife and successor in interest to the Decedent. ECF No. 69 ("SAC") ¶ 5. Donna Hayes is the mother of the Decedent, and Steven Marshall ("Marshall") is the Decedent's father. *Id*. ¶¶ 6–7. Aldo Groba ("Groba") and Kristin Anderson ("Anderson") are both deputies employed by the Santa Clara County Sheriff's Office ("SCCSO"), the local sheriff's department for the County of Santa Clara. *Id*. ¶¶ 9–11. Julian Quinonez ("Quinonez"), Marc Carrasco ("Carrasco"), and Paula McAllister ("McAllister") are detective sergeants employed by the SCCSO. *Id*. ¶¶ 12–14.

This lawsuit stems from an incident that occurred on December 10, 2013. *Id*. ¶ 18. Decedent was an employee at Roku, Inc. ("Roku") in Saratoga, California. *Id*. Plaintiffs allege that the Decedent "lost touch with reality and began to suffer from delusional beliefs" on December 10, 2013. *Id*. ¶ 19. Decedent may have been taking prescription medication on this date. *Id*. ¶ 20.

At some point in the late morning or early afternoon of December 10, 2013, the Decedent entered a conference room in the Roku offices where a meeting was in progress. *Id*. The Decedent "appeared emotionally distressed and disoriented." *Id*. While in the conference room, the Decedent called Marshall and requested that Marshall "pick him up from work right away because he was having a problem." *Id*. One or more Roku employees also called 911 to request help for the Decedent. No Roku employees who witnessed the Decedent's behavior reported that the Decedent posed a threat of violence or criminal behavior. *Id*.

The Decedent then left the building and went to the Roku parking lot. *Id*. ¶ 21. At some

2

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

point, employees with the Santa Clara County Fire Department arrived on the scene and spoke with the Decedent. *Id*. According to Fire Department employees, the Decedent appeared "manic." *Id*. The Decedent voluntarily agreed to go to the hospital. *Id*. Subsequently, paramedics arrived on the scene and advised the Decedent that he could have a family member take him to the hospital. *Id*. ¶ 22. After the Decedent agreed to this proposal, a paramedic called Marshall on the Decedent's mobile phone. *Id*. The paramedic told Marshall that the Decedent was not feeling well and needed to be taken to the hospital. *Id*. Marshall expressed at least twice to the paramedic a desire to take the Decedent to the hospital. *Id*. ¶¶ 22–23.

Subsequent to the arrival of the paramedics, Deputies Groba and Anderson arrived at the scene. *Id*. ¶ 24. A paramedic from the Santa Clara Fire Department "approached Anderson and informed her that [the Decedent] was a psychiatric patient, that he was experiencing a medication imbalance, and that he was agitated." *Id*. ¶ 25. Plaintiffs allege that Groba and Anderson knew or should have known that "they were responding to a call seeking help for an emotionally distressed individual," and that the Decedent "was experiencing mental health issues that required specialized medical assistance, procedures, and tactics." *Id*. ¶ 28. Plaintiffs also allege that Groba and Anderson knew or should have known that the paramedics and other County personnel were "making arrangements . . . to get appropriate medical care for [the Decedent]." *Id*. ¶ 30.

Anderson, "[d]espite lacking a reasonable belief that [the Decedent] presented any threat of harm to anyone . . . approached [the Decedent] from behind, when [the Decedent's] back was to her, and began interacting with [the Decedent]." *Id*. ¶ 32. This caused the Decedent to become "even more upset and agitated." *Id*. ¶ 34. Plaintiffs allege that, during the Decedent's interactions with Anderson and the Fire Department crew, "it was readily apparent that he was not perceiving reality accurately and that he was suffering from delusional beliefs." *Id*. ¶ 33.

At some point, the Decedent "started to fidget with his keychain, which had keys on one end of the chain and a short, thin, rounded aluminum rod at the other." *Id*. ¶ 35. When Anderson asked the Decedent if the Decedent's keychain was a weapon, the Decedent responded in the

3

affirmative. *Id.* During this interaction, Deputy "Groba overreacted and moved quickly towards [the Decedent] with his gun drawn," "possibly causing [the Decedent] to fear for his life." *Id.* ¶ 36. The Decedent, possibly in self-defense, swung his keychain at Groba and Anderson. *Id.* Groba then shot the Decedent in the stomach. *Id.*

At the time Groba shot the Decedent, Marshall was on the phone with one of the paramedics at the scene. *Id.* ¶ 39. Marshall heard the gunshot over the phone, and heard the Decedent cry out in pain. *Id.* Marshall heard the Decedent cry out a second time before the paramedic ended the call. *Id.*

Either Groba or Anderson, or both deputies, proceeded to restrain the Decedent's legs with zip ties. *Id.* ¶ 40. Plaintiffs also claim that Groba and Anderson otherwise "delay[ed] critical medical treatment for the gunshot wound." *Id.* Santa Clara County Emergency Medical Services eventually transported the Decedent to Santa Clara Valley Medical Center, where Bresaz, Marshall, and Hayes, as well as other members of the Decedent's family, subsequently arrived. *Id.* ¶ 42. Plaintiffs were "repeatedly told that staff were stabilizing [the Decedent's] condition." *Id.* However, at approximately 3:45 p.m., on December 10, 2013, a hospital surgeon informed Plaintiffs that the Decedent had died. *Id.* According to Plaintiffs, after the Decedent's death, "deputies of the SCCSO insensitively pressed [the] family for information." *Id.* ¶ 44. Some of these conversations, Plaintiffs allege, were secretly recorded. *Id.*

**B. Procedural History**

On August 26, 2014, Plaintiffs filed the instant lawsuit in this Court, alleging eleven causes of action under the U.S. Constitution and various federal and state statutes. *See* ECF No. 1 ("Compl."). Bresaz, as successor in interest to the Decedent, asserted a cause of action under 42 U.S.C. § 1983 for violations of the Decedent's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution; under 42 U.S.C. § 12132 for violation of the Americans with Disabilities Act ("ADA"); under California Civil Code § 52.1 for violation of the Bane Act; under California Code of Civil Procedure § 377.30 for intentional and negligent infliction of

4
Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

emotional distress; and for negligence. *Id*. ¶¶ 45, 52, 63, 77, 85, 90, & 97. The Plaintiffs collectively asserted causes of action under 42 U.S.C. § 1983 and California Code of Civil Procedure § 377.60 for violation of their Fourteenth Amendment right to familial relationships with the Decedent; under California Code of Civil Procedure § 377.60 for wrongful death; and under California Civil Code § 52.1 for violation of the Bane Act. *Id*. ¶¶ 58, 71, & 82. Marshall individually asserted a cause of action for negligent infliction of emotional distress. *Id*. ¶ 104.

On November 5, 2014, Defendants moved to dismiss six of the eleven causes of action in Plaintiffs' original Complaint, *see* ECF No. 13 ("First MTD"), which this Court granted in part and denied in part, *see* ECF No. 34 ("Order"). Specifically, this Court rejected Defendants' arguments that the Court should dismiss Plaintiffs' claims against Anderson because "Plaintiffs have sufficiently alleged that Anderson was an integral participant in the alleged violation of the Decedent's Constitutional rights." Order at 9–10. This Court also denied Defendants' motion to dismiss Marshall's claim for negligent infliction of emotional distress. *Id.* at 23. This Court granted Defendants' motion to dismiss Bresaz's ADA claim because this Court determined that Plaintiffs had not sufficiently alleged that the Decedent was disabled as defined under the ADA. *Id.* at 11–15. Plaintiffs were, however, granted leave to amend, as this Court found that "Plaintiffs could cure the deficiencies identified . . . by including some factual specificity as to Plaintiffs' claim." *Id.* at 15. Finally, this Court granted with prejudice Defendants' motion to dismiss with respect to Plaintiffs' claim under the Bane Act because Plaintiffs had failed to assert a personal cause of action. *Id.* at 18. This Court also granted with prejudice Defendants' motion to dismiss Bresaz's claim for intentional and negligent infliction of emotional distress because these claims were "barred as a matter of law." *Id.* at 21.

On April 29, 2015, Plaintiffs filed a First Amended Complaint. ECF No. 41 ("FAC"). Almost immediately thereafter, Plaintiffs filed a motion for leave to file a Second Amended Complaint. ECF No. 42. The Court granted this motion during a Case Management Conference held on June 3, 2015, for reasons stated on the record. ECF No. 68.

5

On June 3, 2015, Plaintiffs filed a Second Amended Complaint (ECF No. 69 ("SAC")), asserting nine causes of action against the various Defendants. Bresaz, as successor in interest to the Decedent, asserts claims under 42 U.S.C. § 1983 for violations of the Decedent's rights under the Fourth and Fourteenth Amendments of the U.S. Constitution; under 42 U.S.C. § 12132 for violation of the ADA; and under California Civil Code § 52.1 for violation of the Bane Act. SAC ¶¶ 56, 63, 74, 89, 101. Hayes and Marshall assert claims under 42 U.S.C. § 1983 for violation of the Decedent's rights under the Fourteenth Amendment and under California Civil Code § 52.1 for violation of the Bane Act. *Id.* ¶¶ 69, 94. Marshall asserts a claim for negligent infliction of emotional distress. *Id.* ¶ 97. All Plaintiffs assert a claim under California Code of Civil Procedure § 377.30 for wrongful death. *Id.* ¶ 83.

On August 11, 2015, Defendants moved to dismiss several of the claims in the SAC. Defendants contend that (1) Bresaz's ADA claim "fails to allege facts sufficient to establish that [the Decedent] was a qualified individual with a disability," that (2) Hayes and Marshall "do not have standing" to bring a claim under the Bane Act, and that (3) Plaintiffs' § 1983 claims cannot be asserted against the County "because the County cannot be liable for the manner in which the Sheriff . . . sets policy and trains deputies on use of force and conducting searches." Mot. at 1–2. Plaintiffs filed a response to Defendants' motion to dismiss on August 25, 2015, *see* ECF No. 98 ("Opp'n"), and Defendants filed a reply on September 1, 2015, *see* ECF No. 105 ("Reply").

## II.  LEGAL STANDARD

### A. Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

6

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

## B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

### A. Bresaz's Claim Under the ADA

Bresaz, as successor in interest to the Decedent, alleges that the Decedent "was an individual with a disability within the meaning of the ADA" and that Defendants deprived the Decedent "of his rights under Title II of the ADA by denying him the benefit of the County's emergency health services." SAC ¶¶ 77, 79. Bresaz alleges that Defendants "failed reasonably to

7

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

accommodate [the Decedent's] mental health disability in responding to the call for help with his mental illness." *Id.* ¶ 80. Defendants respond by arguing that Bresaz's ADA claim fails to sufficiently allege that the Decedent had a disability as defined by the ADA and, in the alternative, that the police were under no obligation to accommodate the Decedent's disability.

The Court will undertake its analysis in two parts. First, the Court will determine whether the ADA applies to arrests. Next, the Court will analyze whether the SAC has alleged facts sufficient to show that the Decedent had a disability within the meaning of the ADA.

**1. The ADA Applies to Arrests**

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of that disability. 42 U.S.C. § 12132; *Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997). Consonant with "the majority of circuits to have addressed the question," the Ninth Circuit has held "that Title II applies to arrests." *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014).

The Court, however, notes that the U.S. Supreme Court has yet to rule on this question. *See City and Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1772–74 (2015). In fact, in deciding to hear *Sheehan*, the Supreme Court appeared to believe that petitioners would argue, with respect to one of the questions presented, that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities." *Id.* at 1772. However, petitioners in *Sheehan* in fact "chose to rely on a different argument" before the Supreme Court. "[I]n the absence of adversarial briefing," the Supreme Court declined to weigh in on the question of whether the ADA applies to arrests. *Id.* at 1774.

Thus, this Court must follow the rule of the Ninth Circuit and apply the ADA to arrests. *See Sheehan v. City and Cnty. of San Francisco*, 793 F.3d 1009 (Mem) (9th Cir. 2015). More specifically, in *Sheehan*, the Ninth Circuit recognized two types of ADA claims applicable to arrests: (1) wrongful arrest, "where police wrongly arrest someone with a disability because they

8

misperceive the effects of that disability as criminal activity," and (2) reasonable accommodation, where police "fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." 743 F.3d at 1232. The SAC alleges a reasonable accommodation claim. *See* SAC ¶ 80.

**2. The Decedent Was Not Disabled Within the Meaning of the ADA**

In order to state a claim of disability discrimination under Title II, including a reasonable accommodation claim, a plaintiff must allege that: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinreich*, 114 F.3d at 978; *Sheehan*, 743 F.3d at 1232. Defendants challenge only the first of these four elements—that the Decedent was disabled within the meaning of the ADA.

With respect to the first element, the ADA defines "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). The phrase "physical or mental impairment" means, *inter alia*, "any mental or psychological disorder" including "emotional or mental illness." 28 C.F.R. § 35.104. The phrase "a record of such an impairment" means, *inter alia*, having a "history of ... mental or physical impairment that substantially limits one or more major life activities." *Id.*

Here, Bresaz argues that the Decedent was disabled within the meaning of the ADA under either 42 U.S.C. § 12102(1)(A) or 42 U.S.C. § 12102(1)(C)—that is, that the Decedent suffered

from a physical or mental impairment that substantially limited one or more major life activities (subparagraph (A)), or that the Decedent was regarded as having suffered from such an impairment (subparagraph (C)).  The Court will address subparagraph (C) first and then address subparagraph (A).

### 1. Under Subparagraph(C), Defendants Were Not Obligated to Provide the Decedent Reasonable Accommodations as a Matter of Law

As to subparagraph (C), that the Decedent was regarded as having a disability, Bresaz's reasonable accommodation claim cannot proceed as a matter of law.  Bresaz asserts the ADA claim against various public entities under Title II.  However, under 42 U.S.C. § 12201(h), "a public entity under subchapter II[1] . . . need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section."  Thus, pursuant to these statutory provisions, the Court finds that Defendants would not have been obligated to reasonably accommodate the Decedent even if the Decedent was regarded as having suffered from a disability.

### 2. Under 42 U.S.C. § 12102(1)(A), the SAC Fails to Allege That the Decedent Suffered From A Qualifying Physical or Mental Impairment

In order to state a claim under 42 U.S.C. § 12102(1)(A), Bresaz must demonstrate that the Decedent had "a physical or mental impairment" that "substantially limit[ed] one or more . . . major life activities."  In analyzing this claim, the Court acknowledges that the Court's previous order granting in part and denying in part Defendants' motion to dismiss, issued on March 17, 2015, failed to fully appreciate the impact of the ADA Amendments Act of 2008 ("ADAAA") and failed to discuss subsequent Ninth Circuit precedent analyzing the impact of the ADAAA.

Thus, in this order, the Court will begin its analysis by reviewing the legal framework

---

[1] *See Van Hulle v. Pacific Telesis Corp.*, 124 F. Supp. 2d 642, 643 n.2 (N.D. Cal. 2000) ("The ADA initially was enacted as Public Law 101–336 and was organized into Titles I through V.  When the ADA was codified as 42 U.S.C. § 12101, *et seq.*, the 'Titles' were re-labeled as 'Subchapters.'").

10
Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

established for ADA claims prior to the ADAAA.  The Court will next discuss and summarize some of the pertinent statutory changes enacted under the ADAAA.  The Court will then review Ninth Circuit case law interpreting these changes.  Finally, the Court will examine whether these changes, along with the allegations made in Plaintiffs' SAC, are sufficient to demonstrate that the Decedent suffered a disability under 42 U.S.C. § 12102(1)(A).

Prior to the enactment of the ADAAA, Ninth Circuit case law held that, in deciding whether a disability "substantially limits" a "major life activity," relevant factors "that should be considered include '[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.'" *E.E.O.C. v. United Parcel Serv., Inc.*, 306 F.3d 794, 801 (9th Cir. 2002); *see also Fraser v. Goodale*, 342 F.3d 1032, 1038 (9th Cir.2003) (citing same factors).  These factors were drawn from a number of regulations which have been subsequently amended.

In 2008, Congress amended the ADA in the following ways relevant to the current dispute.  First, Congress sought "[t]o convey congressional intent that the standard created by the Supreme Court . . . and applied by lower courts in numerous decisions, ha[d] created an inappropriately high level of limitation necessary to obtain coverage under the ADA." 29 C.F.R. Part 1630, App. Intro.  Second, Congress sought "[t]o convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.*  Third, Congress sought to "reinstat[e] a broad scope of protection under the ADA."

Accordingly, the amended version of 42 U.S.C. § 12102 now provides courts and administrative agencies with certain "[r]ules of construction regarding the definition of disability." 42 U.S.C. § 12102(4).  "The definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).  Specifically, "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the [ADAAA]." 42 U.S.C. § 12102(4)(B).  Finally,

11

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

"[a]n impairment that is episodic or in remission [may still be considered] a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). EEOC regulations interpreting these ADAAA provisions further provide that "'[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i).

In *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014), the Ninth Circuit took note of these statutory changes and stated that the "findings and purposes [behind the ADAAA] specifically express Congress's view that prior Supreme Court and lower court cases . . . had given 'substantially limits' an unduly narrow construction." Still, although the ADAAA may have lowered the burden for individuals seeking to plead disability discrimination, the ADAAA did not eliminate this burden altogether. Indeed, in *Weaving*, the Ninth Circuit determined that the plaintiff had produced insufficient evidence to show that the plaintiff's disability had substantially limited his ability to work or his ability to interact with others. *Id.* at 1112–14.

It is unclear whether case law that predates the ADAAA, such as *United Parcel*, remains good law in light of the rationale behind the ADAAA and the reasoning behind the Ninth Circuit's decision in *Weaving*. On the one hand, the ADAAA appears to make clear Congress's intent to broaden the scope of disability discrimination coverage under the ADA. On the other hand, *Weaving* also appears to highlight that there are still limits, which a court must draw, between meritorious and non-meritorious claims under the ADA. It is therefore certainly possible that factors considered by courts prior to the ADAAA's enactment—such as the nature, severity, duration, and impact of an alleged impairment—remain pertinent after the ADAAA's enactment, even though these factors may no longer be listed in the regulation for "substantially limits" a major life activity.

With these considerations in mind, the Court finds that the SAC sufficiently alleges that the Decedent was substantially limited in a major life activity. Several factors weigh in support of such a finding. First, as the Court has noted, the ADAAA instructs courts to interpret the "substantially limits" requirement broadly, and accompanying regulations specify that

12

"'[s]ubstantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Second, *Weaving* makes explicit that courts within the Ninth Circuit are to adopt a lenient standard regarding the "substantially limits" requirement. Third, new allegations in the SAC strengthen the Decedent's case that the Decedent was "substantially limit[ed]" in a "major life activity." "[M]ajor life activities include, but are not limited to . . . concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Bresaz argues in the SAC that the Decedent's mental illness substantially limited the Decedent's ability to work. Working is considered a major life activity. 42 U.S.C. § 12102(2)(A). In order to allege that the Decedent was substantially limited in his ability to work, Bresaz must produce "substantial evidence showing that [the Decedent] was limited in his ability to work compared to most people in the general population." *Weaving*, 763 F.3d at 1112 (internal quotation marks omitted).

Here, the SAC states that the Decedent lost touch with reality and began to have delusions on December 10, 2013. These delusions were severe to the point that the Decedent was entering meetings where the Decedent was not invited and "appeared emotionally distressed and disoriented." SAC ¶ 20. The Decedent also expressed a belief that "guns [were] trained on him" and that the Secret Service was after him. *Id.* ¶ 33. The Decedent's actions prompted "[o]ne or more Roku employees [to] call[] 911 to seek help." *Id.* ¶ 20. Furthermore, according to the SAC, the Decedent's delusional state of mind "substantially limited his ability . . . to concentrate, think, communicate, and interact with the SCCSO deputies." *Id.* ¶ 77. If the Decedent did in fact suffer from such severe delusional beliefs, then Decedent would have certainly been "limited in his ability to work compared to most people in the general population." *Weaving*, 763 F.3d at 1112 (internal quotation marks omitted). In other words, the Decedent's alleged mental impairment would have substantially limited the Decedent in a major life activity.

Although some of these allegations in the SAC largely recite the elements of the statute, several others provide depth and detail on the magnitude of the Decedent's limitations. For instance, in contrast to the original Complaint, which alleged generally that the Decedent

13
Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

1  "appeared 'manic'" and that the Decedent suffered from "mental illness," the SAC describes the

2  specific symptoms afflicting the Decedent.  *Compare* Compl. ¶¶ 16, 18 *with* SAC ¶¶ 33–34.  This

3  specificity shows the extent of the Decedent's limitations, as required under the statute.

4        Although the Court finds that the Decedent was substantially limited in performing a major

5  life activity, the Court also finds that the SAC fails to sufficiently allege that the Decedent suffered

6  from a qualifying physical or mental impairment as defined by the ADA.  Several factors counsel

7  in favor of this finding.  First, unlike the "substantially limits" requirement, the ADAAA did not

8  specifically instruct courts to apply a more lenient standard with respect to the qualifying physical

9  or mental impairment requirement.  This, indeed, appears to be the interpretation given to the

10  ADAAA by the Ninth Circuit in *Weaving*—that is, to interpret "substantially limits" broadly, but

11  not necessarily to apply a similarly broad construction to the "physical or mental impairment"

12  requirement.  *See Weaving*, 763 F.3d at 1111 (focusing on how "findings and purposes [of the

13  ADAAAA] *specifically express* Congress's view that prior . . . court cases . . . had given

14  'substantially limits' an unduly narrow construction"); *see also id.* (discussing how "post-2008

15  regulations promulgated by the EEOC" now require courts and administrative agencies to conduct

16  "an individualized assessment" in order to determine "whether an impairment is substantially

17  limiting.").

18        Third, and most importantly, the SAC fails to address the shortcomings identified by the

19  Court in the Court's previous order granting in part and denying in part Defendants' motion to

20  dismiss Plaintiffs' original Complaint.  As this Court previously noted, where, as here, a party

21  alleges that he or she is disabled under the ADA, courts have generally required the party to plead

22  the disability with some factual specificity.  *See O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056,

23  1058 (9th Cir. 2007) (plaintiff adequately alleged that he was disabled where plaintiff pled that he

24  suffered from mental illness including "brain damage, and organic personality disorder"); *Puckett*

25  *v. Park Place Entm't Corp.*, 332 F. Supp. 2d 1349, 1353 (D. Nev. 2004) (allegation that plaintiff

26  suffered from multiple sclerosis "[c]learly . . . qualifies as a physical impairment for purposes of

14

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

the ADA" and satisfies the disability inquiry in an ADA cause of action); *William S. v. Lassen Cnty.*, 2006 WL 929398, at *3 (E.D. Cal. Apr. 11, 2006) (denying motion to dismiss ADA claim even though plaintiff failed to specifically allege how he was mentally or physically impaired, where another of plaintiff's claims specified that plaintiff was HIV positive).

Although these cases were decided prior to 2008, even cases decided after the ADAAA's enactment appear to retain a similar specificity requirement. *See Bolmer v. Oliveira*, 594 F.3d 134, 136 (2d Cir. 2010) (upholding ADA claim in part because plaintiff had a diagnosed mental illness.); *Wingard v. Penn. State Police*, 2013 WL 3551109, at *5 (W.D. Pa. July 11, 2013) (denying motion to dismiss because "[w]hile it is not certain that [the plaintiff's] conditions will be proven to meet the stringent definition of a 'disability' under the ADA," complaint nonetheless contained "allegations of depression leading to attempted suicide."); *Alejandro v. ST Micro Elec., Inc.*, 2015 WL 5262102, at *3 (N.D. Cal. Sept. 9, 2015) ("Courts have held that a plaintiff must allege his disability with specificity to state a claim under the ADA.").

As these cases demonstrate, a successful plaintiff will usually allege that he or she suffered from a specific, recognized mental or physical illness. Here, on the other hand, the SAC contains no allegations that the Decedent suffered from a specific mental disorder or that the Decedent was ever medically diagnosed with having a specific mental disorder. In fact, in contrast to the original Complaint, the SAC no longer even alleges that the Decedent "had a history of mental illness for which he had taken prescription medication." *See* Compl. ¶ 16. Instead, the SAC appears to only allege facts showing that the Decedent suffered from delusional beliefs on a single day—December 10, 2013. Plaintiffs have cited no authority to suggest that a single episode, suffered by an individual with no diagnosis of mental illness and no history of mental illness, is sufficient to constitute a mental impairment under the ADA. The Court has found none in the Court's own research.

The Court also rejects Plaintiffs' argument that "[i]t is immaterial that [the Decedent's] mental illness 'disrupted [only] a single day at work." Opp'n at 5. Plaintiffs point to 42 U.S.C. §

15
Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

1   12102(4)(D), which states that "[a]n impairment that is episodic . . . is a disability if it would

2   substantially limit a major life activity when active." However, a single alleged episode on a

3   single day at work is not "episodic."

4   Indeed, legislative history provides that "[t]his provision is intended to reject the reasoning

5   of court decisions concluding that certain individuals with certain conditions—*such as epilepsy or*

6   *post traumatic stress disorder*—were not protected . . . because their conditions were episodic or

7   intermittent." 29 C.F.R. Part 1630, App. § 1630.2(j)(1)(vii) (emphasis added). Similarly, courts

8   have interpreted this provision to treat episodic as implying that a condition occurs intermittently

9   or occasionally but, at minimum, that the condition occurs more than once. In *E.E.O.C. v.*

10  *AutoZone, Inc.*, 630 F.3d 635, 642–43 (7th Cir. 2010), the Seventh Circuit determined that an

11  individual experiencing physical flare-ups four or five times a week was suffering from an

12  "episodic condition" meriting consideration under the ADA. However, in arriving at this

13  determination, the Seventh Circuit contrasted a flare-up taking place four or five times per week

14  and a flare-up occurring one or two times per year. *Id.* at 643. The Seventh Circuit strongly

15  suggested that individuals suffering from flare-ups one or two times per year would not be

16  considered to have qualifying impairments under the ADA. *Id.*

17  Plaintiffs have cited no case law, and the Court has found none, where a party has stated a

18  cognizable ADA disability discrimination claim based on a single, isolated incident of mental

19  illness, particularly where there is no diagnosis of mental illness or history of mental illness. The

20  Court also emphasizes that these shortcomings were documented in the Court's previous order,

21  with the Court specifically instructing Plaintiffs to "cure the deficiencies identified herein by

22  including some factual specificity as to Plaintiffs' claim." Order at 15. Plaintiffs have failed to do

23  so, and have even removed some supporting allegations that were in the original Complaint, such

24  as the fact that the Decedent "had a history of mental illness for which he had taken prescription

25  medication." Compl. ¶ 16. The Court therefore concludes that Plaintiffs have failed to plead facts

26  sufficient to show that the Decedent suffered from a qualifying mental impairment under the

27

ADA.

In sum, the Court concludes that the ADA applies to arrests and that the Decedent was substantially limited in a major life activity. However, the Court finds that the SAC fails to establish that the Decedent had a mental impairment as defined by the ADA. Plaintiffs have failed to cure the deficiencies identified in the Court's prior order. Granting leave to amend would therefore be both futile and cause undue delay to the proceedings. *See Leadsinger*, 512 F.3d at 532 (listing futility and undue delay as factors to consider in deciding whether to grant leave to amend). Accordingly, the Court GRANTS with prejudice Defendants' motion to dismiss Bresaz's claim under the ADA.

### B. Hayes and Marshall's Claim Under the Bane Act

In the original Complaint in this case, Plaintiffs alleged that "Defendants' conduct . . . interfered with . . . [the Decedent's] rights under [various federal and state laws] . . . through violence or the threat of violence." Compl. ¶ 83. "As a direct and proximate result of defendants' conduct," Plaintiffs sought damages under the Bane Act. *Id.* ¶ 84. In this Court's order addressing Defendants' first motion to dismiss, this Court stated that "[a] party lacks standing to bring a claim under the Bane Act when the party does not claim to have *personally suffered* a violation of a constitutional or statutory right." Order at 16 (emphasis added). Because "Plaintiffs d[id] not allege that they have suffered a constitutional or statutory injury independent of the Decedent," this Court dismissed with prejudice Plaintiffs' Bane Act claim.

Hayes and Marshall (but not Bresaz) have nonetheless re-asserted a nearly-identical Bane Act claim in the Second Amended Complaint. Hayes and Marshall argue that Defendants' conduct interfered with Hayes and Marshall's fundamental interest in maintaining a familial relationship with the Decedent. This interest, Hayes and Marshall claim, represents a protected liberty interest under the Fourteenth Amendment. *See* Opp'n at 9.

As before, the California Court of Appeal's decision in *Bay Area Rapid Transit District v. Superior Court* ("*BART*"), 38 Cal. App. 4th 141 (1995), bars Hayes and Marshall from bringing

17

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

such a claim.  In *BART*, a man was shot and killed by an officer employed by the Bay Area Rapid Transit District.  *Id.* at 142.  As in the instant case, the parents of the man brought a Bane Act claim "seek[ing] damages on their own behalf for violation of *their* civil rights"—namely, for violation, by BART and the officer, of the parents' "constitutional rights to parent and enjoy the society and companionship of their son."  *Id.* at 143 (emphasis added).  The California Court of Appeal rejected the parents' claim.  "The Bane Act," the state court held, "is simply not a wrongful death provision."  *Id.* at 144.  The Act "clearly provides for a *personal* cause of action for the victim of a hate crime," and "is limited to plaintiffs who themselves have been the subject of violence or threats."  *Id.* (emphasis in original).

*BART* governs the instant case.  Hayes and Marshall have provided the Court with no authority to suggest otherwise.  Indeed, the Court has found none in its own research.  As this Court made clear in its previous order, per *BART*, Hayes and Marshall have not "themselves been the subject of violence or threats."  *BART*, 38 Cal. App. at 144.  Indeed, although Hayes and Marshall claim to be "suing under the Bane Act for the deprivation of their own substantive due process rights," Opp'n at 9, Defendants did not deprive Hayes and Marshall of these rights by subjecting Hayes and Marshall to threats, intimidation, or coercion, *see BART*, 38 Cal. App. at 144.  At most, Hayes and Marshall were deprived of their substantive due process rights because of the acts of violence or threats of violence committed by Defendants against the Decedent.  This is the exact sort of "derivative liability" claim that is *not* supposed to be actionable under the Bane Act.  *Id.* at 144–45.

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss Hayes and Marshall's claim under the Bane Act.  Moreover, consistent with this Court's prior order, the Court finds this claim barred as a matter of law and finds that granting leave to amend would be futile.  Hayes and Marshall's claim is therefore dismissed with prejudice.  *See Lopez*, 203 F.3d at 1130 (court may dismiss claim without leave to amend where "pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

18

Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE

### C. Plaintiffs' Claims Against the County Under 42 U.S.C. § 1983

Finally, Defendants argue that Plaintiffs' § 1983 claims against the County should be dismissed because the Santa Clara County Sheriff is a state actor, and state actors are immune from suit under § 1983. As Plaintiffs point out, Defendants' argument is somewhat unusual, as the Santa Clara County Sheriff is not even a named party to the instant case. Opp'n at 10–11. Defendants contend, however, that Plaintiffs "have sued the County on the basis that the County is responsible for [setting the] alleged unconstitutional policies or practices of the Sheriff's Office." Reply at 9. Yet, according to Defendants, "the County has no direct control over the Sheriff's performance of law-enforcement functions." *Id.* at 9. That control, Defendants argue, is exercised by the state. Thus, the County should be dismissed with respect to Plaintiffs' § 1983 claims, and neither the state nor the Sheriff's Office may, as a matter of law, be sued under § 1983.

Defendants' argument is without merit. In *Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2015), the Ninth Circuit held that "when a California sheriff's department performs the function of conducting criminal investigations, it is a county actor subject to suit under § 1983." In arriving at this conclusion, the Ninth Circuit began by taking note of its prior holding in *Brewster v. Shasta County*, 275 F.3d 803, 807–08 (9th Cir. 2001), where the Court determined that sheriffs in California were county actors when performing investigative work. The Ninth Circuit then examined the reasoning of several subsequent state court decisions and concluded that these state court decisions did not "displace [the] holding in *Brewster* that a California sheriff is a county official when investigating criminal activity." 749 F.3d at 765. The Ninth Circuit specifically examined the California Supreme Court's decision in *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004), which held that sheriffs were state actors when in the course of investigating crimes. The Ninth Circuit, however, declined to follow *Venegas* because the determination of whether an official is a state actor or a county actor for purposes of § 1983 is a question of federal law. Accordingly, as a matter of federal law, *Jackson* held that *Brewster* controls, not *Venegas*. *See* 749 F.3d at 765 ("Because *Venegas* disagrees with *Brewster* on a matter of federal law, it does not constitute an intervening decision on controlling state law that would authorize, let alone

19

1  require, us to overrule a prior decision.") (internal quotation marks omitted).

2  Defendants in the instant case acknowledge the Ninth Circuit's holding in *Jackson*.
3  Defendants also acknowledge that the Ninth Circuit considered (and rejected) the various state
4  court decisions that Defendants now urge this Court to rely upon. Mot. at 14–15. In essence,
5  Defendants' contentions represent merely an attempt to re-litigate *Jackson*.

6  These contentions are not well taken. Even if this Court were persuaded about the relative
7  merits of *Venegas*, this Court could not, as a matter of law, depart from the Ninth Circuit's holding
8  in *Jackson*. In order for a district court to reexamine the holding of a prior Ninth Circuit decision,
9  "the relevant court of last resort [here, the California Supreme Court] must have undercut the
10 theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly
11 irreconcilable." *Miller v. Gammie*, 335 F.3d 869, 899–900 (9th Cir. 2003) (en banc). *Venegas*
12 was published prior to *Jackson*. Defendants have failed to identify a California Supreme Court
13 case published after *Jackson* that requires sheriffs to be treated as state actors when performing
14 investigative work, as *Gammie* requires Defendants to do. The Court has also found no such
15 authority in the Court's own research. *Jackson* therefore controls. Plaintiffs have properly
16 pleaded the County as a Defendant in the Second Amended Complaint. Accordingly, the Court
17 DENIES Defendants' motion to dismiss the County with respect to Plaintiffs' § 1983 claims.

## IV. CONCLUSION

19 For the foregoing reasons, Defendants' motion to dismiss Hayes and Marshall's Bane Act
20 claim and Bresaz's ADA claim are GRANTED with prejudice. Defendants' motion to dismiss is
21 otherwise DENIED.

**IT IS SO ORDERED.**

Dated: September 30, 2015

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

20
Case No. 14-CV-03868-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED
COMPLAINT AND ORDER CONTINUING CASE MANAGEMENT CONFERENCE